UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

ARDRA YOUNG,

                Plaintiff,

v.

                              Civil Action No. 2:19-cv-10729
                              Honorable Nancy G. Edmunds
                              Magistrate Judge David R. Grand

STACEY REAM, in her official
and personal capacities,

                Defendant.

_____/

### REPORT AND RECOMMENDATION TO GRANT DEFENDANT'S MOTION FOR SUMMARY JUDGMENT [22] AND TO DENY PLAINTIFF'S MOTION FOR SUMMARY JUDGMENT [23]

This is a *pro se* civil rights action brought under 42 U.S.C. § 1983 by plaintiff Ardra Young, who is a prisoner of the Michigan Department of Corrections ("MDOC"), confined at the Gus Harrison Correctional Facility ("ARF"). Defendant Stacey Ream ("Ream") is a Grievance Coordinator at ARF. Before the Court are cross-motions for summary judgment filed by Young and Ream. (ECF Nos. 22, 23.) Responses were filed to both motions (ECF Nos. 26, 29), and Young filed a reply to Ream's response (ECF No. 28.) Generally, the Court will not hold a hearing on a motion in a civil case in which a party is in custody. *See* E.D. Mich. L.R. 7.1.(f). Here, the Court finds that the facts and legal issues are adequately presented in the briefs and on the record and declines to order a hearing at this time.

**I.**    **RECOMMENDATION**

For the reasons set forth below, **IT IS RECOMMENDED** that Young's motion for summary judgment **(ECF Nos. 23)** be **DENIED** and Ream's motion for summary judgment **(ECF No. 22)** be **GRANTED**.

## II.     REPORT

### A.  The Relevant Facts

Young's lawsuit arises out of one in a series of grievances he filed within MDOC. Young alleges that Ream unlawfully retaliated against him for exercising his right to protected speech in violation of the First Amendment to the United States Constitution.

On November 7, 2018, Young filed a grievance ("G1") against Janet Campbell ("Campbell"), ARF's Health Unit Manager, related to her alleged failure to provide treatment for Young's ear infection. (ECF No. 1, PageID.3.) Young claims Campbell reviewed that grievance in violation of MDOC policy. (*Id.*) Young filed a subsequent grievance ("G2") seeking redress for the alleged improper handling of G1, claiming that he was deprived of his right to due process within the grievance process. (*Id.*) G2 was denied without a "Step I" interview, which Young claims is mandated under MDOC policy. (*Id.*) Young then filed a subsequent grievance ("G3") seeking redress for the failure to interview him regarding G2. (*Id.*) G3 was rejected as being duplicative of a previously-filed grievance. (*Id.*)

On or around December 18, 2018, Young sent a handwritten letter to Ream asking to have the protocol followed in G2 and requesting to be interviewed (the "Letter"). (*Id.* at PageID.11.) The Letter states, in full:

> To: Stacey Ream
> ARF Grievance Coordinator
> Re: ARF-2018-12-3122-27z
>
> I am in receipt of the Grievance Receipt for the above-described grievance, wherein you have declared my issue "Non-Grievable."
>
> The grievance at issue complains of the fact that I was not interviewed at Step I as is expressly required by P.D. 03.02.130(Y). It is beyond dispute that I was not interviewed, and it is likewise beyond dispute that none of the three exceptions/justifications allowed by policy were applicable in this instance.

2

> And yet you are rejecting my grievance as being "Non-Grievable."
>
> P.D. 03.02.130(E) states that "[g]rievances may be submitted regarding alleged violations of policy…including alleged violations of [P.D. 03.02.130] and related procedures.["]  That is exactly what I did in my Step I grievance – I complained of the failure to follow the grievance policy.
>
> I am therefore imploring you to process my grievance as policy dictates.  My grievance has merit and should be given the attention that it deserves.
>
> If you choose to do otherwise, I will grieve the matter and contact every available outside source, ombudsman, et cetera.  I really do not wish to go down this road with you, but rejecting my grievance is an intolerable denial of due process.
>
> I truly hope that this can be resolved locally.  I intend no disrespect.
> Ardra Young #260575
> 2-127-B

(*Id.*)

The very next morning, Ream issued a Misconduct Report against Young, charging him with "insolence" for addressing the Letter using Ream's first and last name.  (ECF No. 1, PageID.12.)  Specifically, the Misconduct Report asserted, "On the above date and time this prisoner submitted a kite with the name Stacey Ream.  First names are not the intended way to communicate with staff.  This behavior was intended to harass, degrade and cause alarm in this employee." (*Id.*)

In addition to the Misconduct Report, Ream sent the Letter back to Young with some of her own handwriting.  First, Ream crossed out her first name in the header and wrote, "not authorized to communicate in this fashion (426[1])." (*Id.*)  Second, where Young had cited the interview policy for grievances, P.D. 03.02.130(Y), Ream wrote, "Thats [sic] not what policy states – Read again." (*Id.*)  After a hearing, Young was found guilty of the insolence misconduct,

---

[1] As discussed below, "426" is the MDOC's code number for an "insolence" charge.

and as a result he was confined to his cell for five days, lost "disciplinary credits," and lost other privileges. (*Id.*, PageID.5.)

Young filed a Step I grievance ("G4") seeking redress for Ream's issuance of the Misconduct Report, stating that Ream issued Young "a bogus misconduct ticket" as retaliation for his Letter. (*Id.*, PageID.4; ECF No. 23, PageID.193.) Ream denied G4 as an attempt to grieve "a decision by a hearing officer," a non-grievable issue. (ECF No. 23, PageID.176.) This denial of G4 was upheld at Step II and Step III, thereby exhausting Young's administrative remedies for this issue. (*Id.*)

### B. Standard of Review

When reviewing cross-motions for summary judgment, the court must assess each motion on its own merits. *See Federal Ins. Co. v. Hartford Steam Boiler Inspection & Ins. Co.*, 415 F.3d 487, 493 (6th Cir. 2005). Federal Rule of Civil Procedure 56 provides: "The court shall grant summary judgment if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a); *see also Pittman v. Cuyahoga County Dep't of Children & Family Servs.*, 640 F.3d 716, 723 (6th Cir. 2011). A fact is material if it might affect the outcome of the case under governing law. *See Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986). In determining whether a genuine issue of material fact exists, the court assumes the truth of the non-moving party's evidence and construes all reasonable inferences from that evidence in the light most favorable to the non-moving party. *See Ciminillo v. Streicher*, 434 F.3d 461, 464 (6th Cir. 2006).

When the party without the burden of proof (generally the defendant) seeks summary judgment, that party bears the initial burden of informing the court of the basis for its motion, and must identify particular portions of the record that demonstrate the absence of a genuine dispute

as to any material fact. *See Celotex Corp. v. Catrett*, 477 U.S. 317, 325 (1986); *Alexander v. CareSource*, 576 F.3d 551, 558 (6th Cir. 2009). "Once the moving party satisfies its burden, 'the burden shifts to the nonmoving party to set forth specific facts showing a triable issue.'" *Wrench LLC v. Taco Bell Corp.*, 256 F.3d 446, 453 (6th Cir. 2001) (quoting *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 587 (1986)). In response to a summary judgment motion, the opposing party may not rest on its pleadings, nor "rely on the hope that the trier of fact will disbelieve the movant's denial of a disputed fact' but must make an affirmative showing with proper evidence in order to defeat the motion." *Alexander*, 576 F.3d at 558 (quoting *Street v. J.C. Bradford & Co.*, 886 F.2d 1472, 1479 (6th Cir. 1989)). Indeed, "'[t]he failure to present any evidence to counter a well-supported motion for summary judgment alone is grounds for granting the motion.'" *Id.* (quoting *Everson v. Leis*, 556 F.3d 484, 496 (6th Cir. 2009)). "Conclusory statements unadorned with supporting facts are insufficient to establish a factual dispute that will defeat summary judgment." *Id.* at 560 (citing *Lewis v. Philip Morris, Inc.*, 355 F.3d 515, 533 (6th Cir. 2004)).

A moving party with the burden of proof (typically the plaintiff) faces a "substantially higher hurdle." *Arnett v. Myers*, 281 F.3d 552, 561 (6th Cir. 2002). As set forth above, the moving party without the burden of proof needs only show that the opponent cannot sustain his burden at trial. "But where the moving party has the burden – the plaintiff on a claim for relief or the defendant on an affirmative defense – his showing must be sufficient for the court to hold that no reasonable trier of fact could find other than for the moving party." *Calderone v. U.S.*, 799 F.2d 254, 259 (6th Cir. 1986) (internal citations omitted). Accordingly, summary judgment in favor of the plaintiff "is inappropriate when the evidence is susceptible of different interpretations or

inferences by the trier of fact." *Harris v. Kowalski*, No. 1:05-CV-722, 2006 WL 1313863, at *3 (W.D. Mich. May 12, 2006) (quoting *Hunt v. Cromartie*, 526 U.S. 541, 553 (1999)).

### C. Analysis

For an inmate to bring a § 1983 claim, all administrative remedies available must first be properly exhausted. 42 U.S.C. § 1997(e)(a). In the MDOC system, that means properly filing and pursing a grievance through the three-step process specified in Policy Directive ("PD") 03.02.130. (ECF No. 22-2.) "[A]s a general matter the First Amendment prohibits government officials from subjecting an individual to retaliatory actions" for engaging in protected speech. *Nieves v. Bartlett*, 139 S. Ct. 1715, 1722 (2019) (quoting *Hartman v. Moore*, 547 U. S. 250, 256 (2006)). "An inmate has an undisputed First Amendment right to file grievances against prison officials on his own behalf." *Herron v. Harrison*, 203 F.3d 410, 415 (6th Cir. 2000). A First Amendment retaliation claim has three elements:

> (1) the plaintiff engaged in protected conduct;
>
> (2) an adverse action was taken against the plaintiff that would deter a person of ordinary firmness from continuing to engage in that conduct; and
>
> (3) there is a causal connection between elements one and two -- that is, the adverse action was motivated at least in part by the plaintiff's protected conduct.

*Thaddeus-X v. Blatter*, 175 F.3d 378, 394 (6th Cir. 1999).

#### 1. Protected Conduct

There are limitations for inmates on what qualifies as protected conduct. First, an inmate's right to file grievances against prison officials on his own behalf is protected only if the grievances are not frivolous. *Herron*, 203 F.3d at 415. Second, prison regulations that impinge on inmates' constitutional rights are valid if they reasonably relate to legitimate penological interests. *Thaddeus-X*, 175 F.3d at 390. Therefore, if an inmate violates a legitimate prison regulation, he is

6

not engaged in protected conduct and cannot establish a First Amendment retaliation claim. *Id.* at 395. Even with these standards in mind, there is a genuine dispute of material fact as to whether Young's December 18, 2018 Letter to Ream constitutes protected First Amendment conduct.

Ream first contends that Young's Letter:

> is not protected conduct because it violates MDOC policy. Young's [] [L]etter to Ream violated the MDOC's grievance policy because it was not a proper Step II grievance. []  A prisoner who is dissatisfied with the response to a Step I grievance is to file a Step II grievance. []  Pursuant to PD 03.02.130, to file a Step II grievance a prisoner must file a completed CSJ-247B. []  A letter to the grievance coordinator is not the proper way for a prisoner to appeal a dissatisfactory Step I grievance response.

(ECF No. 22, PageID.113.)

Young responds that his Letter was not "an attempted appeal of [Ream's G2 response]." (ECF No. 29, PageID.286.)  However, in the very next sentence, Young writes, "The subject of the [L]etter addresses a single topic – [Ream's] improper rejection of Step I [of his G2]."  (*Id.*)  Thus, while Young's Letter could be construed as his attempt to informally resolve a new grievance against Ream,[2] at least in substance, the Letter could also be characterized as a Step II appeal.  Ultimately, though, the Court need not resolve this issue because even if Young's Letter constituted a Step II appeal, he raised a question of fact as to whether it constituted "protected conduct."

---

[2] In her response to Young's summary judgment motion, Ream argues that Young's Letter was not "protected conduct" because "grievances are only protected conduct if they are non-frivolous," and that Young's Letter was frivolous because "the determination to reject or deny a grievance cannot be separately grieved." (ECF No. 26, PageID.263.)  This argument lacks merit because, as Young notes, the MDOC's PD regarding the filing of grievances provides, "Grievances may be submitted regarding alleged violations of policy or procedure . . . including alleged violations of this policy and related procedures."  (ECF No. 28, PageID.273) (quoting ECF No. 22-2, PageID.126.)

First, Ream contends that she issued Young the misconduct charge solely because he addressed his Letter using her first and last name, and not for failing to use the proper Step II form. Thus, the real alleged "protected conduct" is Young's attempt to either (1) raise with Ream his objection to her handling of G2 as a new issue (as Young claims), or (2) submit a Step II grievance appeal (as Ream claims), in either case by writing to her using her first and last name.

Second, Ream's argument conflates the requirements of a First Amendment retaliation claim with the MDOC's exhaustion procedures. While an inmate may be required to utilize specific grievance forms to properly exhaust a grievance, Ream cites no law holding that inmates only have First Amendment rights with respect to speech they make in connection with the formal grievance process. Indeed, as the Sixth Circuit has explained, "[n]othing in the First Amendment itself suggests that the right to petition for redress of grievances only attaches when the petitioning takes a specific form." *Holzemer v. City of Memphis*, 621 F.3d 512, 521 (6th Cir. 2010). One of the principal cases on which Ream relies makes this point clear. In *Maben v. Thelen*, 887 F.3d 252, 264 (6th Cir. 2018), reh'g denied (Apr. 19, 2018), an inmate "politely" and "quietly" voiced an oral complaint about the portion of food he had just been served. A prison guard who overheard the inmate's complaint allegedly "charged" over and issued the inmate a misconduct ticket. The Sixth Circuit found that, "[b]y complaining about the insufficient quantity of food he had received, [the inmate] was pursuing a grievance about prison conditions and seeking redress of that grievance. Accordingly, [the inmate] was engaged in protected conduct." *Id.* Here, while Young's submission of the Letter may mean that he failed to properly exhaust the underlying grievance (G2), that alone does not render his Letter to Ream challenging her handling of the prior grievance unprotected speech.

That leads to Ream's next argument – that Young's Letter was not "protected speech" because it "violated MDOC Policy Directive 03.03.105 [the "Misconduct PD"] because it was insolent. MDOC PD 03.03.105, Appendix B, defines insolence as 'Words, actions, or other behavior which is intended to harass, degrade, or cause alarm in an employee.'" (ECF No. 22, PageID.114; ECF No. 22-4, PageID.160.)[3] Ream explains:

> Young's letter was insolent because it was addressed using Ream's first name. [] Corrections officers and inmates do not address each other using first names because it shows overfamiliarity between the officer and inmate, which can lead to assault, extortion, sexual misconduct, or a number of other security concerns. [] Young's use of Ream's first name in his December 17 letter caused alarm in Ream because it suggested that Young had become too comfortable with Ream and that violence could ensue. [] Because Young's December 17, 2018, letter to Ream violated reasonable MDOC policies, Young was not involved in protected conduct and his First Amendment retaliation claim fails as a matter of law.

(ECF No. 22, PageID.114-15.)

In further support of this argument, Ream cites to the decision of the hearing officer who found Young guilty of "insolence." That officer found:

> Insolence is any words, actions or behavior which is intended to harass, degrade, or cause alarm in an employee. Grievance Coordinator Ream sends back all correspondence as such, GC Ream does not send back paperwork addressed to prisoners using her first and last name. The use of an employee's first name is not common practice or acceptable. All staff including custody and non-custody are to be addressed by either just their last name or their title and last name. Finding of guilty

(ECF No. 23, PageID.197.) Ream also cites to the decision upholding the guilty finding after Young appealed. In that decision, a Deputy explained, "First names are not used on paper work, name tags etc. The use of an employee's first name is not an acceptable way of communication."

---

[3] Ream clearly charged Young under this portion of the Misconduct PD because on Young's Letter she specified "426," and that is the number associated with "Insolence" in the Misconduct PD. (ECF No. 22-4, PageID.144; *see also supra* at 4.)

9

(*Id.*, PageID.198.)[4]

Finally, Ream highlights caselaw holding that "'[F]ederal courts ought to afford appropriate deference and flexibility to state officials trying to manage a volatile environment.' [] 'In assessing the seriousness of a threat to institutional security prison administrators necessarily draw on more than the specific facts surrounding a particular incident; instead, they must consider the character of the inmates confined in their institution, recent and longstanding relations between prisoners and guards, prisoners *inter se*, and the like.'" (ECF No. 22, PageID.114) (quoting *Sandin v. Conner,* 515 U.S. 472, 482-83 (1995) and *Hewitt v. Helms,* 459 U.S. 460, 474 (1983)).

While the Court bears this important deference in mind, it nevertheless finds that Young created a question of fact as to whether merely addressing his Letter to "Stacey Ream" rather than "Ream" or "Grievance Coordinator Ream" constituted "insolence" under the Misconduct PD which would render the Letter not protected speech.

First, the Court notes that in her affidavit, Ream averred, "MDOC staff do not use first names when communicating with inmates. It is a violation of Employee Work Rule 50, Overfamiliarity." (ECF No. 22-3, PageID.136.) However, Ream did not provide the Court with a copy of this Work Rule.

Second, the Misconduct PD provides "Common Examples" of "insolent" language, noting the following: "Using abusive language to refer to an employee; writing about or gesturing to an

---

[4] The fact that the insolence charge against Young was upheld is not a categorical bar to his First Amendment retaliation claim. *See Maben*, 887 F.3d at 262-63 ("Guilt of misconduct may be relevant summary judgment evidence within [the First Amendment retaliation burden-shifting] framework, but it does not automatically bar a plaintiff's claim. . . . . Holding otherwise would [] 'unfairly tempt corrections officers to enrobe themselves and their colleagues in what would be an absolute shield against retaliation claims.' A prisoner 'deserves the opportunity to try to show that the reasons given for disciplining him were a pretext for the prison officials' retaliatory animus.'") (internal citations omitted).

10

employee in a derogatory manner." (ECF No. 22-4, PageID.160.) While this is clearly a non-exhaustive list, at least on its face, a prisoner addressing a letter to an MDOC employee using her first and last name does not seem to fit with the listed examples.

Third, Young provided evidence of his own that suggests the MDOC has no formal policy prohibiting inmates from addressing MDOC staff by their full names. On January 27, 2019, a "third party" assisting Young e-mailed the MDOC's Public Information Office, asking, "Is there a policy directive, rule, memorandum or other directive that prohibits the use of department members [sic] full name by prisoner [sic] in their written correspondence to department members?" (ECF No. 23, PageID.208.) Two days later, a representative from that Office e-mailed back:

> Hello,
>
> It does not appear that any MDOC [sic] specifically prohibits prisoners from using the full name of any member of the Department.

(*Id.*)

In light of that response, and the fact that the Misconduct PD provides, "Misconduct reports may be written only for violations identified in these attachments," Young argues that there was no basis for the insolence charge against him. (ECF No. 22-4, PageID.144.)

In short, while Ream's evidence could carry the day in establishing that Young's Letter constituted "insolence" under the Misconduct PD (thus rendering summary judgment inappropriate for Young),[5] in light of the foregoing, Young raised a material question of fact as to whether his Letter constitutes First Amendment protected conduct.

---

[5] Indeed, in *Howard v. Kemp*, No. CV 307-045, 2010 WL 768182, at *7 (S.D. Ga. Mar. 4, 2010), the court granted summary judgment in a case similar to Young's. In that case, the prison warden had received a letter from the inmate plaintiff in which he "referred to [her] by her first name," and was issued an "insubordination" charge that resulted in similar discipline to that faced by

11

2. *Adverse Action*

There also is at least a genuine dispute of material fact as to whether the "insolence" misconduct charge that Ream issued against Young was an adverse action for purposes of a First Amendment retaliation claim. That charge resulted in Young being confined to his cell for five calendar days, as well as his loss of disciplinary credits and other privileges. (ECF No. 1, PageID.5.) Citing *Maben*, 887 F.3d at 266-67, Ream "concedes that receipt of a misconduct can be an adverse action if the inmate was not violating a legitimate prison regulation." (ECF No. 22, PageID.115.) But, as explained above, Young raised a material question of fact as to whether he violated a legitimate prison regulation.

Moreover, the Sixth Circuit recently explained in *Maben* that the types of punishment imposed on Young can be considered "adverse actions":

> In *Hill v. Lapin*, this Court found that "actions that result in more restrictions and fewer privileges for prisoners are considered adverse." 630 F.3d 468, 474 (6th Cir. 2010). In *Noble v. Schmitt*, this Court denied qualified immunity where the conduct at issue was that "Defendants restricted his privileges after he filed a considerable number of grievances against them." 87 F.3d 157, 162 (6th Cir. 1996). In *Harbin–Bey v. Rutter*, when concluding that the prisoner suffered no adverse action, the Court noted that the prisoner "did not lose any privileges as a result of the [Notice of Intent to Conduct an Administrative Hearing]." 420 F.3d 571, 579 (6th Cir. 2005). . . . In all, the deprivation of privileges is hardly "inconsequential" – indeed, they are all that prisoners really have. Furthermore, the issuance of the minor misconduct ticket subjected Maben to the risk of even more significant

---

Young. The warden submitted an affidavit in which she averred, "In order to maintain order and discipline and to avoid inmates becoming too familiar with staff, inmates are not permitted to refer to prison staff by their first names." *Id.* Similarly, here, Ream avers that, at least in her experience, inmates are "not to use first names when communicating with MDOC staff," and the hearing officer similarly explained that "All staff . . . are to be addressed by either just their last name or their title and last name." (ECF No. 22-3, PageID.136; ECF No. 23, PageID.197.) It is also worth noting that at least one State has enacted legislation recognizing that first-name communication between prison staff and inmates requires both sides' consent. *See, e.g.*, Cal. Code Regs. tit. 15, § 3004 ("Employees and inmates may use first names in conversation with each other when it is mutually acceptable to both parties."). This clearly suggests a default position of inmates and staff not using first-names when communicating with each other.

> sanctions, including confinement to his cell, which is certainly not "inconsequential." *See Hill*, 630 F.3d at 474.

*Maben*, 887 F.3d at 266-67.

And, in *Thomas v. Eby*, 481 F.3d 434, 441 (6th Cir. 2007), the Sixth Circuit explained that, "[b]ecause inmates convicted of major-misconduct charges lose their ability to accumulate disciplinary credits for that month, inmates of ordinary firmness would be more reluctant to engage in protected conduct that may lead to the retaliatory issuance of misconduct tickets." Thus, the court held that issuance of a charge that could result in the loss of disciplinary credits was "a sufficiently adverse action" for purposes of a First Amendment retaliation claim.

For all of these reasons, Young has at least raised a material question of fact as to whether Ream's issuance of the "insolence" charge constituted an "adverse action."

### 3. Causal Connection

The third element of Young's First Amendment retaliation claim requires him to show a causal connection between the protected conduct and the adverse action. This element is satisfied where "the adverse action was motivated at least in part by the plaintiff's protected conduct." *Thaddeus-X,* 175 F.3d at 394. "Once the plaintiff has met his burden of establishing that his protected conduct was a motivating factor behind any harm, the burden of production shifts to the defendant." *Id.* at 399. In order to prevail on summary judgment, the defendant must then "show that he would have taken the same action in the absence of the protected activity." *Id.*

Here, the Court explained that a question of fact exists as to whether Young's Letter demonstrated "insolence" because whereas Ream avers that MDOC inmates may not address MDOC staff by their first names, the MDOC's own Public Information Office seems to indicate that no such formal prohibition exists within the MDOC. But even assuming that factual question

13

exists, Ream satisfied her burden of showing that she would have taken the same action in the absence of Young's protected activity.

In her sworn affidavit, Ream specified facts explaining, separate and apart from any formal "policy" against prisoners' use of staff first names, *why* she issued him the misconduct ticket:

> 10.   . . . Prisoners are not to use first names when communicating with MDOC staff. Prisoners referring to MDOC staff by their first names indicates an overly familiar relationship and that the prisoner is too comfortable with the MDOC staff member. Overfamiliarity is a serious issue within the MDOC because it can lead to assaults, sexual misconduct, extortion, and many other security and safety concerns.
>
> 11.   I was alarmed by Young's use of my first name in his written communication to me on December 17, 2018, because it suggested that Young had become too comfortable and that there was a heightened risk of violence due to Young's level of comfort.
>
> 12.   I wrote Young an insolence misconduct on December 19, 2018, because I believed that his use of my first name in his December 17 communication was intended to harass or cause alarm in me and was thus insolence as defined by MDOC Policy Directive 03.03.105.
>
> * * *
>
> 15.   I would have issued Young the insolence misconduct even if he had not filed grievances, because his letter was insolent by causing me to fear for my safety.
>
> 16.   In my time with the MDOC, I have experienced other inmates that try to address me by my first name to harass me or cause me alarm. Prisoners pass the word around the facility that I am not comfortable with prisoner's [sic] using my first name and that it is harassing and insolent conduct.

(ECF No. 22-3, PageID.136-38.)

While Ream's contentions may not answer the question of whether she properly applied the MDOC's "insolence" standard, that question is not before the Court; Young's claim is not that Ream violated his First Amendment rights by punishing him for addressing her by her first name. Rather, Young's specific claim is that Ream punished him simply because he complained to her

14

about her handling of G2. But Young presented no evidence to counter the distinct factual averments proffered by Ream as to *why*, separate and apart from (1) any formal policy against the use of first names by inmates, and (2) the substance of Young's Letter, she believed his conduct constituted "insolence."

First, Young states that Ream "proffers ZERO evidence in support of these scurrilous propositions. There is nothing in the [L]etter that remotely suggests that Plaintiff's [sic] harbored even the slightest interest in becoming 'comfortable' or 'familiar' with [Ream] to any degree or that he was entertaining thoughts of visiting violence upon her person." (ECF No. 29, PageID.288.) But this argument simply ignores Ream's position that, as a seasoned MDOC staff member, it was Young's addressing his Letter using her first name that demonstrated an "overly familiar relationship" with her. The Letter may appear professional and respectful to this Court and to a layperson, but it may have different implications in the prison setting. *Sandin*, 515 U.S. at 482-83; *Hewitt*, 459 U.S. at 474; *Howard*, 2010 WL 768182, at *7.

Young's argument also ignores Ream's explanation about her past experience with other inmates attempting to harass her by using her first name. Young could have taken discovery regarding that issue and, if it showed that prior instances of such "harassment" did not result in "insolence" charges, that could have certainly raised questions as to why Ream issued the charge against Young. But Young presented no *evidence* to counter Ream's sworn averment on that issue. Moreover, Ream's averment is consistent with the hearing officer's finding that "GC Ream does not send back paperwork addressed to prisoners using her first and last name. The use of an employee's first name is not common practice or acceptable." (ECF No. 23, PageID.197.) *See Maben*, 887 F.3d at 262-63.

Young's only contrary evidence fails to raise a material question of fact on this narrow

15

issue. First, he notes that he has submitted numerous grievances in which he referenced staff members' full names, without facing any discipline. (ECF No. 23, PageID.181.) But submitting *to a third-party grievance reviewer* a grievance that merely identifies the name of the staff member being grieved is different than writing a letter *to* a particular staff member.

The exemplar materials that Young relies on do not change the analysis. While those materials do show ARF employees using their full names on memos being sent out to the inmate population as a whole, not one of them is a communication *from an inmate to a particular MDOC staff member*. In fact, Young did not even identify (whether by providing a document or an averment in an affidavit) a single other instance in which he (or any other MDOC inmate, for that matter) communicated with an MDOC staff member by addressing her by her first name.

Finally, while Young points to the "suspicious temporal proximity" between his Letter to Ream and Ream's issuance of the misconduct charge, that argument rings hollow as Ream *simultaneously* explained to Young the precise reason she issued the charge, even citing the MDOC code section – 426 – for an "insolence" charge, and that explanation is entirely consistent with the other factual averments in her affidavit discussed above.

In short, Young failed to raise a material question of fact as to the evidence Ream presented showing that she would have imposed the same adverse action absent Young's protected conduct. Accordingly, Ream is entitled to summary judgment on Young's First Amendment retaliation claim, and Young's cross-motion should be denied.

### III. CONCLUSION

For the foregoing reasons**, IT IS RECOMMENDED** that Ream's Motion for Summary Judgment **(ECF No. 22)** be **GRANTED** and Young's Motion for Summary Judgment **(ECF No.**

16

**23)** be **DENIED**.

| | |
|---|---|
| Dated: June 30, 2020<br>Ann Arbor, Michigan | s/David R. Grand<br>DAVID R. GRAND<br>United States Magistrate Judge |

### NOTICE TO THE PARTIES REGARDING OBJECTIONS

The parties to this action may object to and seek review of this Report and Recommendation, but are required to act within fourteen (14) days of service of a copy hereof as provided for in 28 U.S.C. § 636(b)(1) and Fed. R. Civ. P. 72(b)(2). Failure to file specific objections constitutes a waiver of any further right of appeal. *Thomas v. Arn*, 474 U.S. 140 (1985); *Howard v. Secretary of HHS*, 932 F.2d 505, 508 (6th Cir.1991); *United States v. Walters*, 638 F.2d 947, 949–50 (6th Cir.1981). The filing of objections which raise some issues, but fail to raise others with specificity, will not preserve all the objections a party might have to this Report and Recommendation. *Willis v. Secretary of HHS*, 931 F.2d 390, 401 (6th Cir.1991); *Smith v. Detroit Fed'n of Teachers Local 231*, 829 F.2d 1370, 1373 (6th Cir.1987). Pursuant to E.D. Mich. LR 72.1(d)(2), a copy of any objections is to be served upon this magistrate judge. A party may respond to another party's objections within 14 days after being served with a copy. *See* Fed. R. Civ. P. 72(b)(2); 28 U.S.C. §636(b)(1). Any such response should be concise, and should address specifically, and in the same order raised, each issue presented in the objections.

### CERTIFICATE OF SERVICE

The undersigned certifies that the foregoing document was served upon counsel of record and any unrepresented parties via the Court's ECF System to their respective email or First Class U.S. mail addresses disclosed on the Notice of Electronic Filing on June 30, 2020.

s/Eddrey O. Butts<br>
EDDREY O. BUTTS<br>
Case Manager
